

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

In re:

**ALICE THOMAS**
**DBA DICON CONSULTING,**

       **DEBTOR.**

**CHAPTER 13**

**CASE NO. 17-14198-KHK**

**HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR6,**

       **MOVANT,**

**vs.**

**ALICE THOMAS**
**and THOMAS P. GORMAN, TRUSTEE,**

       **RESPONDENTS.**

### MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY
### (REAL PROPERTY LOCATED AT 6516 RIVER TWEED LANE, ALEXANDRIA, VA 22312)

<u>NOTICE</u>

<u>YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)</u>

TO:   ALICE THOMAS, PRO SE DEBTOR
       THOMAS P. GORMAN, TRUSTEE

<u>IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.</u>

<u>IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.</u>

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON FEBRUARY 7, 2018 AT 9:30 AM IN THE U.S. BANKRUPTCY COURT, ALEXANDRIA DIVISION, 200 S. WASHINGTON STREET, ALEXANDRIA, VA 22314, COURTROOM II, 2ND FLOOR.**

Johnie R. Muncy, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 73248
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 35678

Prepared By: Samuel I. White, P.C.
Return To: Samuel I White, P.C.
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
Tax Map No.:0721 26010051

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2005-AR6 ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for **IN REM** relief from the automatic stay with respect to certain real property of the Debtor having an address of **6516 River Tweed Lane, Alexandria, VA 22312** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.　　This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2.　　A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on December 11, 2017.

3.　　The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $372,800.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.

4.　　Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Fairfax, Virginia.  A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

5.　　The terms of the Note were amended by a loan modification agreement entered into by and between HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2005-AR6 and the Debtor dated May 27, 2013 (the "Loan Modification Agreement").  A copy of the Loan Modification Agreement is attached hereto as Exhibit C.

6.　　The legal description of the Property is:

**All that Parcel of Land in the City of Alexandria, Fairfax County, State of Virginia, as more fully described in Deed Book 11839, Page 1630 ID #072-1-26-01-001, being known and designated at Lot 51, Section 1-3, THE PINECREST, filed in plat book 6281, Page 1364.**

7.　　Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant.  Debtor executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

8.      Upon information and belief, the Debtor has filed successive bankruptcies, which have repeatedly delayed and hindered Movant's efforts to foreclose.  To date, this present case is the Debtor's third bankruptcy filing since October 19, 2015, to wit:

a.   The Debtor Alice Hannah Thomas filed Chapter 13 Case No. 15-13647-BFK on October 19, 2015 in the Eastern District of Virginia, Alexandria Division.  Though the Debtor filed a Motion to Dismiss on November 17, 2015, the Court dismissed the case on November 20, 2015 due to the Debtor's failure to appear at the hearing on the Debtor's Motion to Defer Credit Counseling.  The filing of this case caused the cancellation of a foreclosure sale scheduled for October 19, 2015.

b.   The Debtor Alice Hannah Thomas dba Diagnostic Consultants LLC filed Chapter 13 Case No. 17-10436-KHK on February 13, 2017, in the Eastern District of Virginia, Alexandria Division.  An Order Dismissing Case was entered on February 27, 2017, after the Court denied the Debtor's Motion to Waive the requirement to complete a pre-petition credit counseling course.  The filing of this case caused the cancellation of a foreclosure sale scheduled for February 13, 2017.

c.   The Debtor filed the instant case on December 11, 2017, which caused the cancellation of a foreclosure sale scheduled for December 11, 2017.

9.      Furthermore, the Debtor has been offered and/or has requested loss mitigation on thirteen (13) separate occasions between November 16, 2011  to October 27, 2017, to wit:

a.   11/16/11 - Denied due to SS HAFA documents not being received

b.   12/21/11 - Denied due to Borrower not sending requested information

c.   05/21/12 - Denied due to Borrower not sending requested information

d.   08/06/12 - Denied due to Borrower not sending requested information

e.   10/17/12 - Denied due to Borrower not sending requested information

f.    04/29/13 - Loan Modification Complete

    g.   04/07/16 - Denied due to HAFA SS/DILA not met

    h.   06/17/16 - Denied due to offer below fair market value

    i.   07/29/16 - Denied due to offer below fair market value

    j.   08/19/16 - Denied due to offer below fair market value

    k.   01/05/17 - Denied due to SSHAFA not closed timely

    l.   08/30/17 - Denied due to Borrower not sending requested information

    m.   10/27/17 - Denied – Appeal Complete

10.    As of January 3, 2018, the unpaid principal and interest balance due is $419,320.77[1] and the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $463,783.49.  The loan is contractually due for the April 1, 2015 monthly payment, with the monthly arrears totaling $62,524.66.

11.    The estimated value of the Property is $458,080.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as Exhibit D.

12.    Cause exists for relief from the automatic stay for the following reasons:

    i.    Movant's interest in the Property is not adequately protected.

    ii.    Debtor's repeated bankruptcy filings in close proximity to scheduled foreclosure sales demonstrate an abuse of the bankruptcy process designed to frustrate Movant's efforts to pursue its remedies related to the property.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay to be granted **IN REM** for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust;

2.    Declaring that any future filing by the Debtor or any co-owners or entities affiliated with them, be ineffective as to the Movant, so that the Movant shall have the right to take lawful action necessary under state law to obtain complete possession of the subject property without further order of this Court or any hearing being necessary;

3.    Waiver of the 14-day stay described by Bankruptcy Rule 4001(a)(3); and

4.    For such other relief as the Court deems proper.

---

[1] $20,116.27 of this is the deferred principal balance and the borrower does not pay interest or make monthly payments on this amount.

Dated: January 5, 2018

HSBC BANK USA, NATIONAL ASSOCIATION
AS TRUSTEE FOR NOMURA ASSET
ACCEPTANCE CORPORATION, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES
2005-AR6

By: **/s/JOHNIE R. MUNCY**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
Samuel I. White, P.C.
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
jmuncy@siwpc.com

### CERTIFICATE OF SERVICE

I certify that on January 5, 2018, the foregoing Notice and Motion were served via CM/ECF on Thomas P. Gorman, Trustee, at the email address registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Alice Thomas, *Pro Se* Debtor, 6516 River Tweed Lane, Alexandria, VA 22312.

**/s/JOHNIE R. MUNCY**
Johnie R. Muncy, Esquire
Samuel I. White, P. C.

Case 18-01093-KHK    Doc 15-1    Filed 10/09/18    Entered 10/09/18 16:55:27    Desc
02/28/2017 3:14:47 PM -0600 WELLSFARGO    Exhibit(s)    Page 6 of 43    PAGE 4 OF 77

4198-KHK    Doc 18    Filed 01/05/18    Entered 01/05/18 16    Main
Document    Page 6 of 43

**Exhibit**

**A**

### INTEREST FIRST ADJUSTABLE RATE NOTE
### 2/6(LIBOR Index-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST
RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

Loan Number

| **5/27/2004** | **Alexandria** | **Virginia** |
| [Date] | [City] | [State] |

| **6516 River Tweed Lane    22312** |
| [Property Address] |

1.  **BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay U.S. $ __372,800.00__
    (this amount is called 'Principal'), plus interest, to the order of the Lender.
    The Lender is __Taylor, Bean & Whitaker Mortgage Corp.__
    I will make all payments under this Note in the form of cash, check or money
    order. I understand that the Lender may transfer this Note. The Lender or anyone
    who takes this Note by transfer and who is entitled to receive payments under this
    Note is called the "Note Holder."

2.  **INTEREST**

    Interest will be charged on unpaid Principal until the full amount of Principal
    has been paid. I will pay interest at a yearly rate of ___6.500___ %. The
    interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the
    rate I will pay both before and after any default described in Section 7(B) of
    this Note.

3.  **PAYMENTS**

    **(A) Time and Place of Payments**
    I make a payment on the first day of every month, beginning on ___July___ , 20__04__
    Before the First Principal and Interest Payment Due Date as described in Section
    4 of this Note, my payment will consist of only the interest due on the unpaid
    Principal balance of this Note. Thereafter, I will pay Principal and interest
    by making a payment every month as provided below.
    I will make my monthly payments of Principal and interest beginning on the First
    Principal and Interest Due Date as described in Section 4 of this Note. I will
    make these payments every month until I have paid all of the Principal and
    interest and any other charges described below that I may owe under this Note.
    Each monthly payment will be applied as of its scheduled due date, and if the
    payment includes both Principal and interest, it will be applied to interest
    before Principal. If on ___June 1___ ,20__34__, I still owe amounts under this
    Note. I will pay those amounts in full on that date, which is called the
    "Maturity Date." I will make my monthly payments at
    ___Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475___
    or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**
    For the first 24 months, my monthly payment will be in the amount of U.S. $ __2,019.33__ .
    My interest payments will change on the 25th payment and every six months thereafter.
    On the First Principal and Interest Payment Due Date, and thereafter my payments will
    be in an amount sufficient to repay the Principal and interest at the installments by
    the Maturity Date. The Note Holder will notify me prior to the date of
    change in monthly payments.

Represents Redacted Information

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid Principal of my
loan and in the interest rate that I must pay. The Note Holder will determine my new
interest rate and the changed amount of my monthly payment in accordance with
Section 4 or 5 of this Note.

4.   **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate will remain the same for the first 24 months and may change on the
first day of the 25th month and on that day every sixth month thereafter. Each date
on which my interest rate could change is called a "Change Date."

**(B)The Index**
My interest rate will be based on an Index. The "Index" is the average of interbank
offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in The Wall Street Journal. The most recent Index figure
available as of the first business day of the month immediately preceding the month
in which the Change Date occurs is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is
based upon comparable information. The Note Holder will give me notice of this
choice.

**(C)Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by
adding _____ percentage points (_____ %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest
one-eighth of one percentage point (0.125%). Subject to the limits stated in Section
4(D) below, this rounded amount will be my new interest rate until the next Change
Date.
The Note Holder will then determine the amount of the monthly payment that would be
sufficient to repay the unpaid Principal that I am expected to owe at the Change
Date in Full on the Maturity Date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly
payment.

**(D)Limits on Interest**
The interest rate I am required to pay at the first Change Date will not be
greater ____9.500___ % or less than ____6.500__ %. Thereafter, my adjustable interest
rate will never be increased or decreased on any single Change Date by more than
____1.000___ percentage points from the rate of interest I have been paying for the
preceding 6 months. My interest rate will never be greater than_____12.500%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the
amount of my new monthly payment beginning on the first monthly payment date after
the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
Before the effective Change Date, the Note Holder will deliver or mail to me a
notice of any changes in my interest rate and the amount of my monthly payment. The
notice will include information required by law to be given to me and also the title
and telephone number of the person who will answer any questions I may have
regarding the notice.

**(G) DATE OF FIRST PRINCIPAL AND INTEREST PAYMENT**
The date of the first payment consisting of both Principal and interest on this Note
(the "First Principal and Interest Payment Due Date") shall be my 25th scheduled
monthly payment due date.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may make a full Prepayment or partial Prepayment without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce
the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes.  If the partial Prepayment is made during the period when my monthly payments consist of only interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of interest, during the period when my payment is interest only, and of Principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) **Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver by Note Holder**
Even if at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to
me under this Note will be given by delivering it or by mailing it by first class
mail to me at the Property Address above or at a different address if I give the
Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be, given by
delivering it or by mailing it by first class mail to the Note Holder at the address
stated in Section 3(A) above or a different address if I am given a notice of that
different address.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally
obligated to keep all of the promises made in this Note, including the promise to
pay the full amount owed. Any person who is a guarantor, surety or endorser of this
Note is also obligated to do these things. Any person who takes over these
obligations, including the obligations of a guarantor, surety or endorser of this
Note, is also obligated to keep all of the promises made in this Note. The Note
Holder may enforce its rights under this Note against each person individually or
against one of us together. This means that any one of us may be required to pay all
of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the right of
Presentment and Notice of Dishonor. "Presentment" means the right to require the
Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right
to require the Note Holder to give notice to other persons that amounts due have not
been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In
addition to the protections given to the Note Holder under this Note, a Mortgage,
Deed of Trust, or Security Deed or ("Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses which might result if I do
not keep the promises that I make in this Note. That Security Instrument describes
how and under what conditions I may be required to make immediate payment in full of
all amounts I owe under this Note. Some of those conditions are described as
follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this
Section 18, "Interest in the Property" means any legal or beneficial interest
transferred in a bond or deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of title by Borrower at a
future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender may
require immediate payment in full of all sums secured by this Security Instrument.
However, this option shall not be exercised by Lender if such exercise is prohibited
by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes
to be submitted to Lender information required by Lender to evaluate the intended
transferee as if a new loan were being made to the transferee and (b) Lender
reasonably determines that Lender's security will not be impaired by the loan
assumption and that the risk of a breach of any covenant or agreement in this
Security Instrument is acceptable to Lender.
To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a
condition to Lender's consent to the loan assumption. Lender may also require the
transferee to sign an assumption agreement that is acceptable to Lender and that
obligates the transferee to keep all the promises and agreements made in the Note
and

in this Security Instrument. Borrower will continue to be obligated under the Note
and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall
give Borrower notice of acceleration. The notice shall provide a period of not less
than 30 days from the date the notice is given in accordance with Section 15 within
which Borrower must pay all sums secured by this Security Instrument. If Borrower
fails to pay these sums prior to the expiration of his period, Lender may invoke any
remedies permitted by this Security Instrument without further notice or demand on
Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)
Alice Hannah Thomas

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
Mortgage Corp.

Erla Carter-Shaw, E.V.P.

3/22/03

Case 18-01093-KHK    Doc 15-1    Filed 10/09/18    Entered 10/09/18 16:55:27    Desc
Exhibit(s)    Page 11 of 43

Case 17-14198-KHK    Doc 18    Filed 01/05/18    Entered 01/05/18 16:09:27    Desc M
2004021084.033    BK 16108 1393    Document    Page 11 of 43
06/01/2004 10:38:22

**Exhibit B**

# Fairfax County Land Records
# Cover Sheet - NX0404034A

**Instrument(s)**
TRUST
**Grantor(s)**
THOMAS, ALICE HANNAH _I_N
**Grantee(s)**
HUNZEKER, MATTHEW TR _I_T

| Consideration | 372800.00 | Consideration % | |
|---|---|---|---|
| Tax Exemption | None | Amount Not Taxed | |
| DEM Number | | Tax Map Number |  |
| Original Book | | Original Page | |
| Title Company | MBH SETTLEMENT GROUP | | Title Case |
| Property Descr. | PINECREST THE LT 51 SEC 1-3 | | |
| Certified | No | Copies | 0 | Page Range |



5/27/2004

Represents Redacted Information

RETURN TO:
M&H SETTLEMENT GROUP
8050 CHAIN BRIDGE RD
SUITE 200 – N
FAIRFAX, VA 22030

This Document prepared by:                                    TMR/PIN:
Teresa Neeloy

[Name/Entity]

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: ████████

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by Alice Hannah Thomas

                                                    , as Borrower (trustor), to

M&H SETTLEMENT GROUP
MATTHEW HUNZEKER                                    , as Trustee, whose address is
7611 LITTLE RIVER TNPK #101W, , ANNANDALE          , VA      22003
                                                    , for the benefit of
                                                    , as beneficiary.
Taylor, Bean & Whitaker Mortgage Corp.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **May 27, 2004**
together with all Riders to this document.

(B)  "Borrower" is Alice Hannah Thomas

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a Florida Corporation                                    organized and
existing under the laws of Florida                                  , Lender's address is
1417 North Magnolia Ave, Ocala, FL  34475

(D)  "Trustee" is M&H SETTLEMENT GROUP    MATTHEW HUNZEKER

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3047 1/01
ITEM9524L1 (0011)—MERS                          (Page 1 of 15 pages)        To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

whose principal office is located in Virginia. Trustee's address is 7611 LITTLE RIVER TNPK #101W, ,
ANNANDALE             , VA      22003

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)   "Note" means the promissory note signed by Borrower and dated May 27, 2004
The Note states that Borrower owes Lender Three Hundred Seventy Two Thousand Eight Hundred and
no/100                                               Dollars (U.S. $ 372,800.00      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than June 01, 2034

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                         Form 3047 1/01
                                                                                         GREATLAND ■
ITEM 7297L2 (0011)—MERS                     (Page 2 of 15 pages)          To Order Call: 1-800-530-9393    Fax: 616-791-1131

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          County                          of                    FAIRFAX                       ;
     [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE ATTACHED LEGAL

which currently has the address of            6516 River Tweed Lane
                                                    [Street]

          Alexandria          , Virginia       22312        ("Property Address"):
          [City]                              [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

VIRGINIA— Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01
ITEM 7972LL3 (0011)—MERS                    (Page 3 of 15 pages)          To Order Call: 1-800-530-9393   Fax: 616-791-1131

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01

ITEM T1714L4 (0011)—MERS                          (Page 4 of 15 pages)                    GREATLAND ■
                                                                        To Order Call: 1-800-530-8393 □ Fax: 616-791-1131

1

required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3047 1/01
ITEM T9741L5 (0211)—MERS                    (Page 5 of 15 pages)                GREATLAND ■
                                                                To Order Call: 1-800-530-9393  Fax: 616-791-1131

agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3047 1/01

ITEM T17114L5 (0011)—MERS    (Page 6 of 15 pages)    To Order Call: 1-800-530-9393    GREATLAND ■
Fax 616-791-1131

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01

ITEM 7972L7 (0011)—MERS                    (Page 7 of 15 pages)                    GREATLAND ■
To Order Call: 1-800-530-9393    Fax: 616-791-1131

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3047 1/01

ITEM 9724L8 (0011)—MERS                (Page 8 of 15 pages)        To Order Call: 1-800-530-8552  Fax 616-791-1131

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01

ITEM T9762L8 (0011)—MERS                    (Page 9 of 15 pages)                    To Order Call: 1-800-530-9393    GREATLAND®
                                                                                    □ Fax: 616-791-1131

by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01

ITEM T972L14 (0011)—MERS                    (Page 10 of 13 pages)                    To Order Call: 1-800-530-9393    GREATLAND ®
                                                                                    Fax: 616-791-1131

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3047 1/01

ITEM T9724L12 (0011)—MERS                                   (Page 12 of 15 pages)         To Order Call 1-800-550-9393         GREATLAND ■
                                                                                          Fax 616-791-1131

collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

23.  Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BK 16108 1407

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS
THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE
PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through
15 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
Alice Hannah Thomas            -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower



Witness:                                    Witness:


VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3047 1/01
ITEM 7573L14 (0011—MERS)            (Page 14 of 15 pages)            To Order Call: 1-800-530-9393  Fax: 616-791-1131

State of Virginia
City/County of **FAIRFAX**

The foregoing instrument was acknowledged before me this                                    (date) by
Alice Hannah Thomas

MAY 2 7 2004

(person[s] acknowledging).

_____
Notary Public

My commission expires:

After Recording Return To:
**MBH SETTLEMENT GROUP
7811 LITTLE RIVER TNPK #101W
ANNANDALE            , VA            22003**

DAVID E. FIELD - NOTARY PUBLIC
County of                         Commonwealth of
Fairfax                            Virginia
My Commission Expires Feb. 28, 2007

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3047 1/01
ITEM T9319L13 (0011)—MERS                    (Page 15 of 15 pages)    To Order Call: 1-800-530-9393    Fax 616-791-1131

**Exhibit A**

*NOT IN THE CITY OF ALEX*

All that Parcel of Land in the City of Alexandria, Fairfax County, State of Virginia, as
more fully described in Deed Book 11839, Page 1630 ID #072-1-26-01-001, being
known and designated at Lot 51, Section 1-3, THE PINECREST, filed in plat book 6281,
Page 1364.

*SHOULD BE I-3*

16

RETURN TO:
MBH SETTLEMENT GROUP
3050 CHAIN BRIDGE RD
SUITE 200 - N
FAIRFAX, VA 22030

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **27th** day of **May 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Taylor, Bean & Whitaker Mortgage Corp., a Florida Corporation**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**6516 River Tweed Lane
Alexandria, VA 22312**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as

**THE PINECREST**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3150 1/01

ITEM T1622L1 (0011)    (Page 1 of 2 pages)    To Order Call 1-800-530-9393 □ Fax 616-791-1131

17

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

_____ (Seal)
Alice Hannah Thomas        -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01

ITEM T1622L2 (0011)        (Page 2 of 2 pages)        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

RETURN TO:
MBH SETTLEMENT GROUP
3050 CHAIN BRIDGE RD
SUITE 200-N
FAIRFAX, VA 22030

Loan Number: ▮▮▮▮

## ADJUSTABLE RATE RIDER
( LIBOR Six-Month Index As Published in  *The Wall Street Journal* )
- Rate Caps Accrued Interest Only for Fixed Rate Period -

THIS ADJUSTABLE RATE RIDER is made this day on _____5/27/04_____
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed
(the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable
Rate Note (the "Note") to ___Taylor, Bean & Whitaker Mortgage Corp.___
("Lender") of the same date and covering the property described in the Security Instrument and located at:

6516 River Tweed Lane, Alexandria, VA  22312
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES
IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE
NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE
BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of _____6.500. The Note provides for changes in the interest
rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of _____June 2008_____, and on that day every  6th
month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published
in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable
information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my interest rate by adding _____Six and One Half
percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to
the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded
amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in
substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than _____9.500 or less
than 6.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more
than 1.000 ____percentage points (%) from the rate of interest I have been paying for the preceding 6 months. My
interest rate will never be greater than ____12.500 %.

(page 1of 2)

(E) Effective Date of Change

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.      TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.   As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)         _____ (Seal)
Alice Hannah Thomas

_____ (Seal)         _____ (Seal)

_____ (Seal)         _____ (Seal)

Page 2 of 2

RETURN TO:
MBH SETTLEMENT GROUP
3060 CHAIN BRIDGE RD
SUITE 200 – N
FAIRFAX, VA 22030

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

# PREPAYMENT OPTION RIDER

## (Fixed Rate Loan)

Date:  May 27, 2004

Loan Number:  ▮▮▮▮▮

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be
incorporated into that certain Deed of Trust, Mortgage or Security Deed of even date herewith (the
"Security Instrument") executed by borrower, as trustor, in favor of:

Taylor, Bean & Whitaker Mortgage Corp.

("Lender"), as beneficiary, and also into that certain promissory note (the "Note") of even date herewith executed
by Borrower in favor of Lender. To the extent that the provisions of this Prepayment Option Rider (the "Rider")
are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of the Rider shall
prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

Section 4 of the Note is amended to read in its entirety as follows:

4. BORROWER'S PAYMENTS BEFORE THEY ARE DUE
I have the right to make payments of principal at any time before they are due. A prepayment of the
entire unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid
principal is known as a "partial prepayment".

Except as provided below, I may make a full prepayment or a partial prepayment without paying any penalty.
If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced
no more than one month. If I make any other partial prepayment, I must still make each later payment as it
becomes due and in the same amount. I may make a full prepayment at any time. If the original principal
amount of this Note is $100,00 or less, I may make a full prepayment or a partial prepayment without paying
any penalty. However if the original principal amount of this loan exceeds $100,000, and if within the
first  2   year(s) after the execution of the Security Instrument, I make a prepayment, I will pay a
prepayment charge in an amount equal to two percent (2%) of the unpaid balance at the time of the
prepayment.

By signing below, borrower accepts and agrees to the terms and covenants contained in this Prepayment
Rider.

_Alice Hannah Thomas_          MAY 2 7 2004          _____
Alice Hannah Thomas                Date                                         Date

                                      _____          _____
                                      Date                                         Date

▮▮▮▮▮

06/01/2004

**Exhibit**

**C**

This Document Prepared By:
NETASHA HILL
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

When recorded ma
First American Title
Loss Mitigation Title Services 1079.12
P.O. Box 27670
Santa Ana, CA  92799
RE: THOMAS - PROPERTY REPORT

Tax/Parcel No.

_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $372,800.00          Investor Loan No.
Unpaid Principal Amount: $358,089.07          Loan No: (scan barcode)
New Principal Amount $434,235.76
New Money (Cap): $76,146.69

## HOME AFFORDABLE MODIFICATION AGREEMENT (DEED OF TRUST)
## (Step Two of Two-Step Documentation Process)

### Tax Exempt per Virginia State Code 58.1-803C

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
HOME AFFORDABLE MODIFICATION AGREEMENT - NON GSE

First American Mortgage Services                                        Page 1

Grantor: THOMAS, ALICE HA                    Grantee: HSBC BANK USA
Date/Time: 12/22/2014 14:56:54               Instrument: 2014404239.008
Book/Page: 23914/0281                        # of Pages: 9
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY

Represents Redacted Information

Borrower ("I"):[1] **ALICE HANNAH THOMAS**
Borrower Mailing Address: **6516 RIVER TWEED LANE, ALEXANDRIA, VIRGINIA 22312**
Lender or Servicer ("Lender"): **HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR6**
Lender or Servicer Address: **636 GRAND REGENCY BLVD, BRANDON, FL 33510**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **MAY 27, 2004**
Property Address: **6516 RIVER TWEED LANE, ALEXANDRIA, VIRGINIA 22312**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**Prior instrument reference: Recorded on JUNE 1, 2004 in INSTRUMENT NO. 2004021084.033 BOOK 16108 PAGE 1393, of the Official Records of FAIRFAX COUNTY, VIRGINIA**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.
I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations and Covenants**. I certify, represent to Lender, and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   B.   I live in the Property as my principal residence, and the Property has not been condemned; (i) I lived in the Property as a principal residence immediately prior to my displacement, or (ii) I intend to re-occupy the Property as a principal residence in the future, or (iii) I do not own any single-family real estate other than the Property, or (iv) the Property has not been condemned; The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned.

   C.   There has been no change in the ownership of the Property since I signed the Loan Documents. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program")).

   D.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

HOME AFFORDABLE MODIFICATION AGREEMENT - NON
First American Mortgage Services                    Page 2

E. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

F. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **JUNE 1, 2013** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **JUNE 1, 2013**.

A. The Maturity Date will be: **MAY 1, 2053**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not credited to my Loan. The new principal balance of my Note will be **$434,235.76** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. **$20,116.27** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$414,119.49**. Interest at the rate of **2.0000%** will begin to accrue on the Interest Bearing Principal Balance as of **MAY 1, 2013** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **JUNE 1, 2013**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------------------|-------------------------------------------|------------------------|-------------------|-----------------------------|
| 1-5 | 2.0000% | 05/01/2013 | $1,254.06 | $489.95 May adjust periodically | $1,744.01 May adjust periodically | 06/01/2013 | 60 |
| 6 | 3.0000% | 05/01/2018 | $1,456.93 | May adjust periodically | May adjust periodically | 06/01/2018 | 12 |
| 7-40 | 3.3750% | 05/01/2019 | $1,535.44 | May adjust periodically | May adjust periodically | 06/01/2019 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

K.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

L.   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Original Promissory Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

M.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

N.   If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

O.   **This Agreement modifies an obligation secured by an existing security instrument recorded in FAIRFAX COUNTY, VIRGINIA, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $358,089.07. The principal balance secured by the existing security instrument as a result of this Agreement is $434,235.76, which amount represents the excess of the unpaid principal balance of this original obligation.**

HOME AFFORDABLE MODIFICATION AGREEMENT - NON

First American Mortgage Services                    Page 6

In Witness Whereof, the Lender has executed this Agreement.

**WELLS FARGO BANK, NA. AS ATTORNEY-IN-FACT FOR HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR6**

**Kenya Blackmon**

By _____     Vice President Loan Documentation     5·27-13

(print name)                              Date

(title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

STATE OF ___MN___                              COUNTY OF ___Dakota___

The instrument was acknowledged before me this ___5/27/13___ by ___Kenya Blackmon___ the ___Vice President Loan Documentation___ of WELLS FARGO BANK, NA. AS ATTORNEY-IN-FACT FOR HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR6, a ___Vice President Loan Documentation___ on behalf of said corporation.

_____

Notary Public

Printed Name: ___Marie Patrice Burr___

My commission expires: ___1/31/16___

MARIE PATRICE
BURR
NOTARY PUBLIC - MINNESOTA
My Commission Expires January 31, 2016

**THIS DOCUMENT WAS PREPARED BY:**
NETASHA HILL
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

HOME AFFORDABLE MODIFICATION AGREEMENT - NON

First American Mortgage Services                    Page 7

In Witness Whereof, I have executed this Agreement.

_____ (Seal)          _____ (Seal)
Borrower                                   Borrower
**ALICE HANNAH THOMAS**
_5/13/2013_____               _____
Date                                       Date

_____ (Seal)          _____ (Seal)
Borrower                                   Borrower

_____                 _____
Date                                       Date

_____ (Seal)          _____ (Seal)
Borrower                                   Borrower

_____                 _____
Date                                       Date
              [Space Below This Line for Acknowledgments] _____

### BORROWER ACKNOWLEDGMENT

State of _VIRGINIA_____

County of _ARLINGTON_____

The foregoing instrument was acknowledged before me this _5/13/2013_____ (date) by
**ALICE HANNAH THOMAS** (name of person acknowledged)

_____
(Signature of person taking acknowledgment)

_NOTARY PUBLIC_____
(Title or rank)

_7182671_____
(Seal Number, if any)

(Notary seal: NICHOLAS MASIH / COMMONWEALTH / ID# 7182671 / My Comm. Expires 3/31/2016 / OF VIRGINIA / NOTARY PUBLIC)



# Fairfax County Circuit Court
## CPAN Cover Sheet v2.0

**Instruments**
   ASSIGNMENT

**Grantor(s)**
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC_F_N

**Grantee(s)**
   HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR NOMURA A_F_N

| Consideration | | Consideration % | 100 | |
|---|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | | |
| DEM Number | | Tax Map Number | ████ | |
| Original Book | | Original Page | | |
| Title Company | | | Title Case | ████ |
| Property Descr. | BEING KNOWN AND DESIGNATED AS LOT 51, SECTION 1-3, | | | |
| Certified | No   Copies   0 | | Page Range | |



Represents Redacted Information

TAX MAP #: ███████

MIN: ███████
MERS Phone: 1-888-679-6377

## NOTICE OF ASSIGNMENT

**FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns,** Assignor herein, its successor and assigns, hereby assigned and transferred to **HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH CERTIFICATES SERIES 2005-AR6,** Assignee herein, with an address of c/o **America's Servicing Company, 3476 Stateview Blvd., MAC# X7801-013, Fort Mill, South Carolina 29715,** its successors and assigns, all right, title, and interest in and unto a certain Deed of Trust, dated May 27, 2004 and executed by ALICE HANNAH THOMAS to MATTHEW HUNZEKER, Trustee, securing an indebtedness in the original amount of $372,800.00, and recorded at Instrument Number/Deed Book16108 AT PAGE 1393, RECORDED ON JUNE 1, 2004, among the land records of the COUNTY OF FAIRFAX, VA.

Commonly known as 6516 RIVER TWEED LANE, Alexandria, VA 22312

Signed on this __18__ day of __May__, 2011

ASSIGNOR: Mortgage Electronic Registration Systems, Inc. ("MERS")

By: _Shelaya Glass_

Name: Shelaya Glass
Title: Assistant Secretary

STATE OF MINNESOTA           )
COUNTY OF DAKOTA             ) SS.
On __May  18__, 2011, before me, **Taehoony Chin**_____, personally
appeared ____Shelaya  Glass____, Assistant Secretary for Mortgage Electronic

Registration Systems, Inc., personally known to me (or proved to me on the basis of satisfactory

evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged

to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,

executed the instrument.

Notary Public    **Taehoony Chin**
My Commission expires: 01-31-2013



TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

PREPARED BY: SHAPIRO & BURSON, LLP
13135 Lee Jackson Highway,
Suite 201, Fairfax, Virginia 22033
SB # ███████

Grantor: MORTGAGE ELECTRO          Grantee: HSBC BANK USA, N
DateTime: 07/22/2011 14:01:57         Instrument: 2011027292.026
Book/Page: 21765/0159                 # of Pages: 2
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY

Represents Redacted Information

## Exhibit

## D

Main    Fairfax County    Tax Administration    Real Estate    Property Search    Contact Us

Address    Map Number    Map Search

Profile

Sales

Values

Tax Details

Residential

Commercial

Map

Structure Size

MAP # ████
THOMAS ALICE HANNAH                                    6516 RIVER TWEED LN

Values

| Tax Year | 2017 |
|---|---|
| Current Land | $101,000 |
| Current Building | $357,080 |
| Current Assessed Total | $458,080 |
| Tax Exempt | NO |
| Note | |

Values History

| Tax Year | Land | Building | Assessed Total | Tax Exempt |
|---|---|---|---|---|
| 2016 | $101,000 | $357,080 | $458,080 | NO |
| 2015 | $91,000 | $334,010 | $425,010 | NO |
| 2014 | $85,000 | $321,160 | $406,160 | NO |
| 2013 | $85,000 | $307,950 | $392,950 | NO |
| 2012 | $80,000 | $300,980 | $380,980 | NO |
| 2011 | $80,000 | $300,980 | $380,980 | NO |
| 2010 | $80,000 | $300,980 | $380,980 | NO |
| 2009 | $95,000 | $347,340 | $442,340 | NO |
| 2008 | $115,000 | $349,240 | $464,240 | NO |
| 2007 | $115,000 | $353,510 | $468,510 | NO |
| 2006 | $115,000 | $341,820 | $456,820 | NO |
| 2005 | $110,000 | $307,990 | $417,990 | NO |
| 2004 | $101,000 | $243,595 | $344,595 | NO |
| 2003 | $75,000 | $243,595 | $318,595 | NO |
| 2002 | $55,500 | $212,225 | $267,725 | NO |
| 2001 | $55,500 | $176,175 | $231,675 | NO |
| 2000 | $55,500 | $155,115 | $210,615 | NO |

1 of 1
Return to Search Results

Actions

Neighborhood Sales

Printable Summary

Printable Version

Links

Data Copyright  Fairfax County  [Disclaimer/Privacy Policy]    Last Updated: 19/Dec/2017 DB:PORA34CUR

Site Design Copyright 2014 Tyler Technologies. All Rights Reserved.

**Represents Redacted Information**